IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CASSETTA D. TAFT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-08-425-F |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## **REPORT AND RECOMMENDATION**

Plaintiff Cassetta Taft seeks judicial review of a denial of benefits by the Social Security Administration ("SSA"). The Court should reverse and remand for further proceedings.

## BACKGROUND

Ms. Taft applied for insurance benefits based on an alleged disability. Administrative Record at pp. 92-94 (certified June 5, 2008) ("Rec."). The SSA denied the application,[1] and the present action followed. As Ms. Taft claims, the administrative law judge failed to discuss two material medical opinions and the omission requires reversal and remand.[2]

---

[1]    Rec. at pp. 7-9, 41-53.

[2]    Ms. Taft also alleges an error at step five, but the Court need not consider this argument in light of the suggested reversal on other grounds. *See infra* pp. 2-10; *see also Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the [administrative law judge's] treatment of this case on remand.").

## STANDARD OF REVIEW

The Court must determine whether the SSA's decision is based on substantial evidence and the correct legal standard. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). In this circuit, the SSA must follow specific rules when weighing the evidence, and departure from these rules constitutes reversible error. *See Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir. 1988).[3]

## FAILURE TO DISCUSS
## TWO MEDICAL OPINIONS

Both parties rely on well-worn legal adages for their respective positions. For example, the Plaintiff claims that the administrative law judge had failed to discuss significant probative evidence. In response, the Defendant points out that:

- an administrative law judge need not discuss every piece of evidence,

- the decision contained discussion regarding many of the medical opinions, and

- some of the omitted medical opinions referred to physical limitations which were arguably encompassed in the judge's assessment of residual functional capacity.

None of the observations provide meaningful guidance to the Court in the resolution of this appeal.

Instead, three inquiries are dispositive:

- Were any medical opinions on the physical limitations omitted in the decision?

---

[3] There the court stated: "There are specific rules of law that must be followed in weighing particular types of evidence in disability cases. Failure to follow these rules constitutes reversible error." *Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir. 1988) (citations omitted).

- What were the precise physical limitations found and rejected by the judge?

- Did the decision suggest the possibility of a different result if the administrative law judge had followed these medical opinions?

Consideration of the three inquiries should lead to reversal and remand based on the administrative law judge's failure to discuss medical opinions involving gait limitations and radiculitis.

I.     Gait Limitations

Although the administrative law judge need not discuss every evidentiary item, she erred in her failure to discuss Dr. Hill's assessment of gait limitations. The materiality of the omission is evident when the Court considers Dr. Hill's opinion, the actual limitations assessed by the judge, and the discussion of the Plaintiff's gait in the administrative decision.

A.     The Administrative Law Judge's Failure to Discuss Dr. Hill's Opinion

On September 4, 2001, John Hill, D.O. gave the following assessment: "Morbid obesity in this 36-year-old female that limits her ability to ambulate and makes her gait and stride unsafe and unsteady." Rec. at p. 299. Although the administrative law judge discussed a great deal of the medical evidence, she did not mention Dr. Hill's assessment. *See id.* at pp. 43-51.

B.     The Physical Limitations Found and Rejected by the Judge

The administrative law judge found that the Plaintiff could walk or stand roughly three hours in a workday. Rec. at pp. 49, 52. But in discussing the listings and credibility, the administrative law judge concluded that:

- "[t]he medical evidence [did] not show findings of a significant loss of gait and station;"[4] and

- the medical record did not indicate significant impairment of gait.[5]

C. Materiality of the Administrative Law Judge's Omission

As noted above, the administrative law judge found that the Plaintiff could walk or stand approximately three hours in a workday. *See supra* p. 3. The Defendant suggests that this assessment would encompass Dr. Hill's opinion regarding the gait. Not surprisingly, the Plaintiff suggests the opposite. Again, however, the Court need not guess because the administrative law judge elsewhere stated that the medical evidence had not shown "a significant loss of gait" and that the medical record had not reflected a significant impairment in the gait. Rec. at pp. 46, 48; *see supra* pp. 3-4.

Perhaps the administrative law judge had legitimate reason to discount Dr. Hill's opinion regarding the lack of "safety" and "steadiness in the "gait." Rec. at p. 299; *see supra* p. 4. But the decision does not refer to Dr. Hill's opinion. *See supra* p. 3. As a result, the

---

[4] Rec. at p. 46.

[5] In discussing credibility, the administrative law judge stated:

> It is generally accepted, in the medical profession, that medically severe intractable pain and other exertional limitations, continuing for an extended period, will tend to manifest themselves in physical changes, such as premature aging, weight loss, impaired gait, weakness in the extremities, progressive physical deterioration and atrophy of associated musculature. Changes of this sort, appropriate to the impairment alleged, do not appear to be present to a significant degree, according to the medical record in this case.

Rec. at p. 48. Relying in part on this observation, the administrative law judge concluded that Ms. Taft's complaints were "not entirely credible." *Id*. at p. 52.

4

Court can only guess whether the administrative law judge had overlooked Dr. Hill's opinion or had failed to express her reasons for the assessment of insignificant gait limitations.

The Defendant points out that according to the administrative law judge, she had "carefully considered all of the medical information." Rec. at p. 46. The Court may assume that the judge's statement was true. But, an administrative law judge must do more than "consider" all of the medical evidence. Instead, the administrative law judge had a duty to provide specific, legitimate reasons to reject Dr. Hill's opinion. *See Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (*per curiam*); *Doyal v. Barnhart*, 331 F.3d 758, 764

(10th Cir. 2003) (citation omitted). Even if the administrative law judge had "considered" Dr. Hill's opinion,[6] she did not provide any reasons for rejecting it.[7]

A similar issue arose in *Kerwin v. Astrue*, 244 Fed. Appx. 880 (10th Cir. Aug. 8, 2007) (unpublished op.). There a consultative examiner found that the claimant "lacked a safe or stable gait without the use of a cane." *See Kerwin v. Astrue*, 244 Fed. Appx. at 884. Without mention of this opinion, the administrative law judge found that the claimant could perform "light" work, which would have required the ability to stand or walk up to six hours

---

[6] The Defendant suggests that the medical conclusions at issue are not considered "medical opinions" because they appear in the physicians' "treatment notes." Brief in Support of the Commissioner's Decision at p. 9 (Jan. 6, 2009) ("But an [administrative law judge] is not required to consider a collection of treatment notes as a medical opinion."). This suggestion is inaccurate.

Under the pertinent regulations, "[m]edical opinions" are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite your impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). This definition would include Dr. Hill's opinion regardless of whether it had appeared in treatment notes or a more formal document.

In arguing that treatment notes do not constitute a "medical opinion," the Defendant relies solely on *Eacret v. Barnhart*, 120 Fed. Appx. 264 (10th Cir. Jan. 10, 2005) (unpublished op.). Brief in Support of the Commissioner's Decision at p. 9 (Jan. 6, 2009). There the plaintiff argued based on treatment notes that the physician had expressed an inability to work over a 22-month period. *Eacret v. Barnhart*, 120 Fed. Appx. at 267. The appeals court simply stated: "The physician did not state such an opinion, however, and the [administrative law judge] was not required to treat the collection of treatment notes as a medical opinion that [the plaintiff] was unable to work." *Id.* The court never suggested that the treatment notes would be deficient as a "medical opinion." The issue instead was what the medical opinion involved. *Id.* Elsewhere, the Tenth Circuit Court of Appeals has unambiguously held that physicians' opinions in treatment notes can be considered "medical opinions" if they fit the regulatory definition. *See*, *e.g.*, *Southard v. Barnhart*, 72 Fed. Appx. 781, 785 (10th Cir. July 28, 2003) (unpublished op.) ("On remand, the [administrative law judge] will need to reconsider Dr. Wills' opinions and treatment notes under the rules and regulations for evaluating treating source opinions." (citation omitted)).

[7] As noted above, the opinion was not mentioned in the decision. *See supra* pp. 3-4.

in an eight-hour workday. *See id*. at 882, 885. The Tenth Circuit Court of Appeals ordered a remand, in part because the judge had violated the agency's regulations by failing to provide specific, legitimate reasons for rejecting the consultative examiner's opinion on the claimant's lack of "a safe or stable gait without the use of a cane." *Id*. at 884-85.

The *Kerwin* court's rationale is equally applicable here. As in *Kerwin*, the administrative law judge appeared to discount any gait limitations without mention of a consultative examiner's opinion about the lack of a safe and steady gait. This omission required reversal in *Kerwin*, and the same is true here.

II.     Radiculitis

The administrative law judge also failed to discuss Dr. Lo's diagnosis of radiculitis. This omission proved material in light of this diagnosis, the actual limitations assessed by the judge, and discussion of the radiculitis in the administrative decision.

    A.     The Administrative Law Judge's Failure to Discuss Dr. Lo's Opinion

On November 13, 2002, Patrick Lo, D.O. diagnosed "[l]umbar radiculitis." Rec. at p. 405. This diagnosis was not discussed in the administrative decision. *See id*. at pp. 41-53.

B.     <u>The Physical Limitations Found and Rejected by the Judge</u>

In part, the administrative law judge discounted Ms. Taft's allegations of pain based on: (1) physical findings that were generally within normal limits;[8] and (2) the medical expert's testimony "that aches and pains were due to obesity."[9]

C.     <u>The Materiality of the Administrative Law Judge's Omission</u>

In the administrative hearing, the Plaintiff described "shooting pain" up and down her neck and into her legs and knees. *Id*. at p. 547. As noted above, the administrative law judge appeared to discount the Plaintiff's complaints of pain based on the presence of "normal" physical findings and the medical expert's attribution of the symptoms to obesity. *See supra* p. 8. In her assessment of the pain complaints, however, the judge never mentioned Dr. Lo's diagnosis of lumbar radiculitis. *See supra* p. 7.

Two physicians have described the symptoms of lumbosacral radiculitis to "include shooting electric pain that *radiates* down from the lower back and/or buttock into the lower extremity." Grant Cooper, M.D. & Joseph Herrera, D.O., *Manual of Musculoskeletal Medicine* 117 (2008) (emphasis in original); *see also Cross v Commissioner of Social Security*, 2008 WL 4425851, Westlaw op. at 2 n.6 (W.D. Pa. Sept. 30, 2008) (unpublished

---

[8]     Rec. at p. 49.

[9]     Rec. at pp. 45-46; *see id*. at p. 559 (the medical expert's testimony that "[t]he major problem is some aches and pains probably in relation to her obesity").

op.).[10] Another medical doctor wrote that "the most constant symptom" of radiculitis is "pain." Israel Wechsler, M.D., *A Textbook of Clinical Neurology* 241 (1958). He added: "The pain may come on slowly or rapidly; it may be dull, sharp, neuralgic, or lancinating, paroxysmal or constant." *Id*. Two other physicians provided a similar description of radiculitis symptoms:

> These are neuralgic pains, which are usually severe, yet very variable. They usually occur in crises, and are sticking and lancinating in character, at times extremely intense; not infrequently resembling the pains of tabes. The pains have a tendency to remit and then to recur at shorter intervals, leaving a certain soreness behind.

Smith Ely Jelliffe, M.D., Ph.D. & William White, M.D., *Diseases of the Nervous System: A Text-Book of Neurology and Psychiatry* 475-76 (1935).

These medical texts suggest that the diagnosis of radiculitis could result in the type of radiating pain described by Ms. Taft. Nonetheless, the administrative law judge appeared to discount Ms. Taft's pain complaints without mention of Dr. Lo's diagnosis of radiculitis. The result could have been different if the administrative law judge had complied with her

---

[10] The *Cross* court stated:

> Individuals suffering from radiculitis report pain that radiates along a nerve path because of pressure on the nerve root where it connects to the spine. The location and type of pain depends on the area of the spine where the compression occurs. For instance, radiculitis in the cervical spine may cause pain in the neck or radiate down the arm. If located in the thoracic spine, radiculitis may cause pain in the chest area. The most common complaint, however, is in the lower or lumbar spine area, with pain in the hips, legs and feet.

*Cross v. Commissioner of Social Security*, 2008 WL 4425851, Westlaw op. at 2 n.6 (W.D. Pa. Sept. 30, 2008) (unpublished op.).

obligation to consider Dr. Lo's opinion. Thus, reversal and remand are required. *See Saleem v. Chater*, 86 F.3d 176, 180 n.4 (10th Cir. 1996).[11]

## NOTICE OF THE RIGHT TO OBJECT

Any party may file written objections with the Clerk of the United States District Court. *See* 28 U.S.C. § 636(b)(1). The deadline for objections is May 20, 2009. *See* W.D. Okla. LCvR 72.1. The failure to file timely objections would result in waiver of the right to appeal the suggested ruling.[12]

## STATUS OF THE REFERRAL

The referral is terminated.

Entered this 30th day of April, 2009.

_____
Robert E. Bacharach
United States Magistrate Judge

---

[11] In *Saleem v. Chater*, the administrative law judge denied a disability claim. *See Saleem v. Chater*, 86 F.3d at 178. In part, the judge discounted the plaintiff's allegation of pain based on the absence of an anatomical problem reflected in a myelogram, CT scan, and EMG reports. *See id*. at 180 n.4. The Tenth Circuit Court of Appeals held that the administrative law judge had failed to properly evaluate the claimant's pain. *See id*. at 178. In part, the appeals court relied on the administrative law judge's failure to consider a treating physician's diagnosis of radiculopathy. *Id*. at 180 n.4.

[12] *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *see also Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").